UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN MILLAN,

      Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

      Respondents.

Case No. 2:26-cv-1682-KCD-NPM

/

## ORDER

Petitioner Juan Millan filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] As best the Court can tell, he claims that his continued detention violates the Fifth Amendment. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 8.) For the reasons below, the petition is **GRANTED**.

### I. Background

Millan is a Cuban citizen who illegally entered the United States, was ordered removed in 2009, and then placed on an order of supervision when his deportation stalled. On November 30, 2025, ICE took Millan into immigration custody to execute the removal order. Cuba denied his

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

repatriation, and Respondents state that Millan has refused to sign forms to effect his removal to Mexico. (Doc. 8-1 at 22-24.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious

constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 699. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Millan satisfies the initial temporal requirement. ICE took him into custody over seven months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Millan has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal. He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. Indeed, the Government has had many years to deport Millan, and it has

3

failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Millan's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Millan will be removed in the near future. (Docs. 8, 8-1.) Instead, the Government proffers that it will attempt removal to Mexico, but Millan has failed to sign the forms for that removal and has verbally stated he will not go. (Doc. 8-1 at 2.) But there's no evidence that ICE has attempted to remove Millan to Mexico, such as transporting him to the border. And although Millan refused to sign the forms, the Government does not tell the Court whether that refusal even acts as an impediment to his removal. It doesn't seem so because the deportation officer's declaration states that ICE will attempt to remove him to Mexico "in the near future." (Doc. 8-1 at 3.) At bottom, because the Government offers little to show that Millan has impeded his own removal and offers nothing to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, Millan must be released.

## IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Millan will be removed in the

reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his prior order of supervision. To the extent Millan raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Juan Millan from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 12, 2026.

Kyle C. Dudek
United States District Judge